RLOBRANO, Judge.
First National Bank of Commerce (FNBC) appeals a trial court judgment which recognized Maloney Cinque, LTD., d/b/a Mardi Gras Truck Stop’s (MGTS) right to storage fees in preference to FNBC’s security interest on two 1990 International Trucks. FNBC’s appeal raises the issues of whether MGTS proved its entitlement to storage fees; whether La. R.S. 32:1711 et seq., The Louisiana Towing and Storage Act, (the Act) grants a lien in favor of MGTS; and, if a lien is authorized by the Act, whether or not it primes FNBC’s security interest.
On August 12, 1997 FNBC filed petitions for executory process seeking the seizure and sale of two International Trucks to satisfy its security interests as represented by two security agreements and promissory notes executed on September 29 and November 25 of 1995. It is undisputed that those security interests were timely and properly perfected and that there were delinquent balances owed on each underlying debt.
On November 7, 1997 MGTS intervened in both foreclosure suits asserting that it was owed storage fees pursuant to La. R.S. 32:1711, et seq., and that MGTS had a lien or security interest which primed FNBC’s security interest. By consent of the parties, the sheriffs sale went forward and the proceeds were placed in the ^registry of the court. On December 8, 1997 the trial court rendered judgment granting a lien in favor of MGTS, superior to FNBC’s security interest, for storage in the amount of $1,650.00 per truck ($10.00 per day for 165 days). As a result FNBC perfects the instant suspensive appeal.
FNBC first argues that the trial court judgment has no basis in fact because no evidence was offered by MGTS in support of its entitlement to storage fees. Furthermore says FNBC, the Louisiana Towing and Storage Act does not grant a lien or privilege for storage fees; but if a contrary interpretation is rendered by this court, then such a lien would not prime FNBC’s prior perfected security interest.
We first observe that the record does not contain a transcript of the proceedings conducted on December 5, 1997, presumably because no evidence was taken. The judgment of December 8th says it is based on a consideration of “the pleadings, briefs, oral arguments of counsel, and the law.” Therefore, FNBC’s initial argument has merit. However, we find it unnecessary to remand for an evidentiary hearing because we agree with FNBC’s position on the legal issues it *665 raises. Those issues are dispositive of the case and in the interest of judicial economy we address them.
The Louisiana Towing and Storage Act (the Act) was adopted in 1989 with the stated purpose of regulating those who conduct towing and storage businesses in Louisiana “in order to prevent frauds, impositions, and other abuses upon its citizens.... ” La. R.S. 32:1711. MGTS argues that, in addition to regulating the industry, the Act also provides the owner of a storage or parking facility a security interest on vehicles left in storage. According to MGTS, that lien primes FNBC’s security interest. In support of that argument, MGTS relies on the provisions of La. R.S. 32:1728 which provides, in pertinent part:
LA. Whenever any such vehicle has been left in storage with any person engaged in the business of public storage of motor vehicles and the same has not been claimed for a period of forty-five days or more, and no payment for the costs of storage has been made for that period, the person with whom the vehicle has been left for storage may dispose of it and collect the charges and costs of storage in the manner set forth hereinafter.
B. After the forty-five day period has lapsed, he shall forward a certified letter, return receipt requested, to the owner at the owner’s last known address and to the mortgage holder, should there be any, advising in the letter the exact location of the vehicle, the date it was placed in storage, and by whom so placed, the outstanding charges against the vehicle, and the general condition of the vehicle. The letter shall also include a statement placing the registered owner and mortgage holder, if any, on notice that, unless action is taken on their part to claim the vehicle from the possession of the place of storage or unless an agreement is made by either or both of them to pay outstanding storage charges for continued storage of the vehicle and all costs incurred for the notification required by this Chapter, not to exceed the cost authorized by R.S. 32:1714(5), within 15 days from the receipt of the letter, the vehicle will be advertised for sale at public auction and the proceeds disposed of as hereinafter provided.
MGTS emphasizes the language of subsection B which authorizes a public auction of the vehicles.
MGTS’s reliance on R.S. 32:1728 is misplaced. While that statute permits the owner of a storage facility to sell a vehicle left on its premises in excess of forty-five days where storage fees have not been paid, it does not create a lien or security interest which would encumber the vehicle after it has been removed from the premises. In fact, subsection (B) requires that after forty-five days, the storage facility must notify the owner and mortgage holder of the vehicle’s location and the outstanding charges. If, within fifteen days of receipt of that notice, the vehicle is not removed from the premises or if an agreement to pay the storage fees and costs is not made, then the vehicle can be sold by the storage facility at public auction and the proceeds disposed of in accordance with the statute. Subsection (C) then provides the mechanism for the sale and R.S. 32:1730 provides for the |5disposition of the proceeds.[1] However, there is no provision in the Act creating a security interest which attaches to the vehicle once it leaves the storage premises.
Statutes which create liens or privileges are stricti juris and their provisions are to be strictly construed against the parties in whose favor the liens are created. Triangle Pacific Corporation v. National Building and Contracting Co. Inc., 94-0619, 94-0629 (La.App. 1 Cir. 3/3/95), 652 So.2d 552. While the Act authorizes the sale of a vehicle to satisfy storage fees, it does not create a lien to secure those fees. And, once a vehicle is removed from the storage premises, the owner of the premises no longer has the right to sell the vehicle to satisfy outstanding storage *666 fees. Although the storage owner may still have a personal right or cause of action against certain parties for storage fees, there is no lien created by R.S. 32:1701, et seq. securing them.
For the reasons assigned, the trial court judgment is reversed.
REVERSED AND RENDERED.

. R.S. 32:1730 is not applicable in this case. It applies where the storage facility owner actually sells the vehicle. The funds remaining after the payment of the storage fees are credited to the owner. If the owner does not claim the funds within six months, they are deemed forfeited to the person who made the sale.