JOHNSON, J.,
would grant and assigns reasons.
hThe Defendant was convicted by a jury of possession of cocaine based on evidence that an officer recovered a crack pipe with cocaine residue on his person when responding to an unrelated complaint. The trial court adjudicated defendant a fourth felony offender and sentenced him to life imprisonment at hard labor. On appeal, the First Circuit affirmed defendant’s conviction, but amended the habitual offender adjudication (concluding that one conviction was invalid for enhancement purposes, but nonetheless finding a different conviction sufficed to prove him a fourth felony offender), and affirmed the adjudication as amended.
Regarding defendant’s claim of exces-siveness, the First Circuit determined that the trial court failed to mention the sentencing guidelines under LSA-C.Cr.P. art. 894.1 before imposing the sentence of life imprisonment at hard labor. Accordingly, the First Circuit vacated defendant’s sentence and remanded the case to the trial court for resentencing in conjunction with consideration of the sentencing guidelines. State 2v. Leblanc, 04-1032 (La.App. 1st Cir.12/17/04), 897 So.2d 736. This Court denied writs. State v. Leblanc, 05-0150 (4/29/05), 901 So.2d 1063 (Calogero, C.J., *1088 Johnson, J., and Knoll, J., voting to grant). On remand, the court resentenced defendant to life imprisonment at hard labor. The court of appeal affirmed the resen-tence, State v. LeBlanc, 05-2344 (La.App. 1st Cir.6/9/06), 931 So.2d 563.
In State v. Johnson, 03-2993 (La.10/19/04), 884 So.2d 568, this Court overruled State ex rel. Mims v. Butler, 601 So.2d 649 (La.1992), and held that multiple guilty pleas entered the same day, may each be used to enhance a subsequent conviction, so long as the convictions stemmed from wholly separate criminal episodes. Relying on Johnson, the court of appeal found that, notwithstanding the constitutional failure of one of the predicate convictions relied on by the district court, the defendant nevertheless could be adjudicated a fourth felony offender based on his single guilty plea to four separate offenses on June 22, 1993, in St. Tammany Parish. State v. Leblanc, 04-1032 (La. App. 1st Cir.12/17/04), 897 So.2d 736. This Court denied defendant’s writ application challenging the appellate court’s retroactive application of the new rule of judicial interpretation. State v. LeBlanc, 05-0150 (4/29/05), 931 So.2d 563.
LSA-R.S. 15:529.1(B), as amended by Acts 2005, No. 218, § 1, now provides in pertinent part that:
... Multiple convictions obtained on the same day prior to October 19, 2004, shall be counted as one conviction for the purpose of this Section.
Notably, the 2005 amendment precludes retroactive application of Johnson not only to cases in which the predicate crime is committed before October 19, 2004, but also to cases in which the offender committed the predicate crime after October 19, 2004, (ie., at a time he had notice that the rule had changed) but the prior [sconvictions used to calculate offender status upon commission of a subsequent felony offense occurred before October 19, 2004. The amendment thus responds directly to defendant’s complaint in his initial application to this Court in 05-K-0150 that at the time he entered his 1993 guilty pleas, which later formed part of the habitual offender status ladder, he had no notice that they would constitute anything more than a single conviction if he were convicted again of a felony offense and adjudicated an habitual offender under LSA-R.S. 15:529.1. Defendant argued that the lack of notice undercut the voluntariness of the pleas, entered at a time when the law considered them a single conviction for habitual offender proceedings, and required either setting aside the convictions, or prospective application only, of Johnson.
In State v. Williams, 40,866 (La.App. 2nd Cir.4/26/06), 930 So.2d 203 (Brown, C.J., dissenting), writ denied, 06-1590 (La.1/8/07), 948 So.2d 121, the Second Circuit recently created a split in the circuits over the question by declining to apply Johnson retroactively in a case in which the defendant committed the predicate crime before Johnson but (unlike the present case) was sentenced as an habitual offender after this Court decided Johnson. The majority in Williams thus applied the controlling jurisprudence of this Court (i.e. Mims) in effect on the date of the commission of the predicate offense, although supplanted by the time of his habitual offender adjudication and sentence.
In the present case, the argument against retroactive application of Johnson appears stronger than in Williams because both the commission of the predicate offense (September 23, 2002) and the de *1089 fendant’s initial sentencing as an habitual offender (January 12, 2004) occurred before the date of decision in Johnson. However, the defendants in both LeBlanc and Williams occupied the same position |4with respect to their prior convictions used in the habitual offender ladder, all of which occurred well before October 19, 2004. In fact, while the legislature did not specifically provide for retroactive application of 2005 La. Acts 218, and in the absence of such express provision statutory enactments are ordinarily prospective only, (LSA-C.C. art. 6; LSA-R.S. 1:2), the recent act may be fairly described as interpretative of existing law in direct response to an aspect of Johnson not expressly addressed by the Court when it rendered the decision. The act may thus preempt the debate over Johnson’s retro-activity. See Sudwischer v. Estate of Hoffpauir, 97-0785, p. 9 (La.12/12/97), 705 So.2d 724, 729 (“Interpretive laws are those which clarify the meaning of a statute and are deemed to relate back to the time that the law was originally enacted.”).
The Williams majority apparently endorsed that view, albeit without explicit discussion, in the face of the state’s argument that the 2005 Act was not interpretive in nature, and that Johnson controlled review of cases in the direct appeal pipeline during the period of time from the date of decision to the effective date of 2005 La. Acts 218, or August 15, 2005, in effect singling out for uniquely harsher treatment a narrow class of offenders sandwiched between two much larger classes of offenders who were sentenced while the Mims rule prevailed and who will be sentenced under the current law as amended by 2005 La. Acts 218 to reincor-pórate the Mims rule. The arbitrariness of that result suggests why the court of appeal in Williams chose a different path.
In my mind, the First Circuit should have done no more than affirm the district court’s finding that defendant qualified as a third felony offender, in which case he would have been subject to a maximum sentence of 10 years imprisonment at hard labor. LSA-R.S. 15:529.1(A)(b)(I). This Court should grant defendant’s application |Bfor reconsideration, vacate his adjudication as a fourth felony offender and remand the case to the district court for a new habitual offender hearing.
Reconsideration of a writ following a denial of a writ application is rare, but not unprecedented, and appears justified by the extreme circumstances in the present case. The uncorrected error in this case, a life sentence rather than a ten-year(lO) maximum sentence. See State v. Hammons, 565 So.2d 542 (La.App. 1st Cir.1990), writ denied, 572 So.2d 61 (La.1991); reconsideration granted, 575 So.2d 382 (La.1991), rev’d, 597 So.2d 990 (La.1992),
Therefore, for the foregoing reasons, I would have granted this application.